IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| BURKE BRADFORD CARROLL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:15-cv-503-GMB |
| | ) | [WO] |
| NANCY A. BERRYHILL,[1] Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On January 19, 2012, Plaintiff Burke Bradford Carroll ("Carroll") applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, respectively, alleging a disability onset date of August 25, 2011 for both claims. Carroll's claims were denied at the initial administrative level. Carroll then requested and received a hearing before an Administrative Law Judge ("ALJ"). On August 26, 2013, the ALJ held a hearing, and on November 13, 2013 denied Carroll's claims. Carroll requested a review of the ALJ's decision by the Appeals Council, and that request was denied on June 23, 2015. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security (the "Commissioner") as of June 23, 2015.

---

[1] Nancy A. Berryhill is the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the Defendant in this lawsuit. No further action needs to be taken to continue this lawsuit pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The Clerk of Court is DIRECTED to take the appropriate steps to reflect this change on the docket sheet.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73.1 of the Local Rules for the United States District Court for the Middle District of Alabama, the parties have consented for the undersigned United States Magistrate Judge to conduct all proceedings in this case and to enter a final judgment. Based on the court's careful review of the parties' arguments, the record, and the relevant case law, the court concludes that the decision of the Commissioner is due to be REVERSED and this matter is REMANDED to the Administrative Law Judge for further proceedings.

## I.  STANDARD OF REVIEW

The court reviews a social security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotations omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself

would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239.  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42

U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medially acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Carroll bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Is the claimant's impairment(s) severe?
(3) Does the claimant's impairment(s) satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Carroll was 44 years old at the time of the ALJ's decision. R. 90.  He is married with two children and lives with his wife. R. 103.  He earned a high school diploma and holds a bachelor's degree in telecommunications and film. R. 86, 90 & 104.  He claims to suffer from extreme pain in his right leg and foot since an injury he suffered in 2001 when a motor vehicle ran over his foot. R. 82 & 116.  The pain limits his ability to sit, stand, and walk for extended periods of time. R. 117–22.  Over the 15 years preceding the ALJ's decision, Carroll worked as an installation manager and salesman for companies that install home automation, alarm, and lighting control systems. R. 106–11.  Prior to the injury in 2001, he installed the systems himself. R. 110.  He also managed a small restaurant in Atlanta, Georgia. R. 110.

Following an administrative hearing, the ALJ found that Carroll suffered from the following severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c): "complex regional pain syndrome, type 1, lower extremity; arthritis of right foot, status post right foot surgery including fusion; and status post fusion site left hip." R. 80.  Despite these severe impairments, the ALJ found, at step three of the analysis, that Carroll did not have an impairment or combination of impairments that meets or medically equals the severity of one of those listed in the applicable regulations. R. 81.  The ALJ further found, at steps four and five, that Carroll has the residual functional capacity ("RFC") to perform

"sedentary work."[2] R. 81–89. Specifically, the ALJ concluded that Carroll can perform sedentary work with the following limitations:

> [Carroll] would require an on-demand sit/stand option to relieve pain and discomfort and he can ambulate short distances of up to 25 yards per instance with an assisted walking device. He can never use right foot controls and never climb ramps, stairs, ladders, or scaffolds. He can frequently balance with an assisted walking device as well as frequently stoop, occasionally crouch but never kneel or crawl. He can never be exposed to dangerous machinery, dangerous tools, hazardous processes, or unprotected heights. He can never operate commercial motor vehicles or be exposed to extreme heat, extreme cold or vibration. He can tolerate moderate noise levels. He is limited to routine and repetitive tasks and simple work related decisions. Any time off task by [Carroll] would be accompanied by normal workday breaks.

R. 81. Ultimately, the ALJ concluded that Carroll was not disabled within the meaning of the Social Security Act from August 25, 2011, his alleged disability onset date, through the date of the ALJ's decision, and the ALJ denied his claims. R. 91.

## IV. DISCUSSION

Carroll contends that the ALJ erred in three ways: (1) by failing to properly evaluate the medical opinion of an examining physician, Dr. Alphonza Vester; (2) by failing to compose a complete hypothetical question to the vocational expert ("VE"); and (3) by improperly applying Social Security Ruling 03-2p. Doc. 12 at 3. Carroll also claims that the Appeals Council committed reversible error by failing to evaluate the evidence Carroll

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

submitted in support of his request for review. Doc. 12 at 3.  Because the court concludes that the ALJ's failure to evaluate Carroll's Complex Regional Pain Syndrome in accordance with Social Security Ruling 03-2p constitutes reversible error, the remaining three issues are mooted by the court's decision to remand this case for further administrative proceedings.

As noted above, the ALJ concluded that Carroll's Complex Regional Pain Syndrome ("CRPS") is a severe impairment under 20 C.F.R. §§ 404.1520(c) and 416.920(c). R. 80.  According to Social Security Ruling 03-2p, CRPS is a "chronic pain syndrome most often resulting from trauma to a single extremity." SSR 03-2p.  It is characterized by pain "out of proportion to the severity of the [initial] injury" and abnormalities of the skin, subcutaneous tissue, and bone in the affected area. *Id.*  The pain is typically described as "persistent, burning, aching, or searing" and accompanied by swelling, changes in skin color, texture, or temperature, osteoporosis, sensitivity to touch, or "abnormal sensations of heat or cold." *Id.*  Pain at the site of the initial injury can often be followed by muscle pain, joint stiffness, and limited mobility. *Id.*  "Without appropriate treatment, the pain and associated atrophic skin and bone changes may spread to involve an entire limb." *Id.*  It typically affects individuals between the ages of 18 and 49. *Id.* Carroll argues that the ALJ committed reversible error by failing to comply with Social Security Ruling 03-2p and requests remand for the purposes of the consideration of "additional evidence and the making of additional administrative findings in accordance with Ruling 03-2p." Doc. 12 at 15.

The record demonstrates that Carroll appears to have a prototypical case of CRPS. After the 2001 injury to his right foot, Carroll experienced severe pain, and x-rays in April of 2002 revealed "arthritic changes" in the foot with "severe bone spurring and narrowing." R. 320.  Dr. Sameh A. Labib, Carroll's treating physician, diagnosed him with posttraumatic osteoarthritis and anterior tarsal syndrome as a result of crushed nerves in the foot. R. 321.  Dr. Labib informed Carroll on multiple occasions that he would never regain the full function of his foot, and performed surgery to remove bone spurs in 2002. R. 304–05, 316–17 & 321.  Dr. Labib continued to treat Carroll regularly until 2004 and saw him again in 2007, when he noted that Carroll's pain persisted and x-rays of his right foot indicated arthritis, bone spur formation, and narrowing. R. 289–90.  Dr. Labib concluded that Carroll had a "permanent disability." R. 303.  Dr. Alphonza Vester's consultative examination on April 17, 2013 revealed noticeable tenderness in the right foot, a decrease in temperature of the foot, discoloration, reduced range of motion, and venous insufficiency. R. 353.  By this point, the pain had spread to Carroll's leg, and Dr. Vester concluded that Carroll is "moderately to severely limited" by the chronic pain in his leg and foot. R. 353.  Carroll testified that the pain varies between "dull, sharp, stabbing, burning, [or] aching" and that his foot is extremely sensitive to touch and pressure. R. 116–17.  He also reported that the pain can be "sporadic" in that it can affect different areas of the leg at different times, but has remained constant in the foot. R. 117.  Heat and cold make the pain worse, and he is limited in his ability to sit, stand, and walk. R. 117–20 & 353–54.

Because CRPS's pathogenesis is not fully understood and it is not a listed impairment under the Social Security regulations, the Social Security Administration issued SSR 03-2p "to explain its policies for developing and evaluating disability claims based on [CRPS]." *Brooks v. Barnhart*, 428 F. Supp. 2d 1189, 1191 (N.D. Ala. 2006). The ruling provides a detailed medical overview of CRPS and offers standards to be followed by courts in evaluating claims that arise out of a CRPS diagnosis. *See generally* SSR 03-2p. The ruling instructs ALJs to determine the effect that CRPS has on a claimant's functional capacity by "evaluat[ing] the intensity, persistence, and limiting effects of the individual's symptoms." *Id.* Specifically,

> in determining RFC, all of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacities. Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.

*Id.* Information from medical sources on the effects of the claimant's CRPS on his ability to perform work and daily activities is important, particularly if it contrasts the claimant's current abilities with his abilities prior to the onset of CRPS. *Id.* Moreover, "third-party information," including statements from neighbors, friends, and relatives, "helps to assess an individual's ability to function on a day-to-day basis and helps to depict the individual's capacities over a period of time." *Id.* Importantly, "conflicting evidence in the medical record is not unusual in cases of [CRPS] due to the transitory nature of its objective findings and the complicated diagnostic process involved." *Id.*

District courts within the Eleventh Circuit routinely hold that the failure to assess the claimant's CRPS in accordance with SSR 03-2p "undermines the ALJ's determinations

9

with respect to the medical opinion evidence, Plaintiff's credibility, and the RFC determination." *E.g.*, *Volk v. Astrue*, 2012 WL 4466480, at *4 (M.D. Fla. Sept. 27, 2012). Such a failure also undermines an ALJ's hypothetical question to the vocational expert, an issue Carroll presents here. *Hill v. Comm'r of Soc. Sec.*, 2011 WL 679940, at *11 (M.D. Fla. Feb. 16, 2011); *see also* Doc. 12 at 9–11. An ALJ's discounting of a CRPS claimant's complaints of pain, for example, "is not supported by substantial evidence without a proper evaluation of Claimant's [CRPS] because [CRPS] is characterized by complaints of pain which are 'out of proportion to the severity,' and objective findings can be minimal." *Hill*, 2011 WL 679940, at 11 (quoting SSR 03-2p). Indeed, a "disproportionate, but nevertheless real, perception of pain is the hallmark of this neurological syndrome." *Brooks*, 428 F. Supp. 2d at 1193.

Here, the ALJ did not properly evaluate Carroll's CRPS in accordance with the directives of Ruling 03-2p. Though the ALJ found that Carroll's CRPS was a severe impairment, he concluded that Carroll's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 87. After a detailed recounting of the medical records and Carroll's reported symptoms, the ALJ concluded that "the medical evidence does not reveal an impairment that would be disabling or that would prevent work at the above stated residual functional capacity." R. 88. In support of his conclusion, the ALJ cited Carroll's daily activities, which consisted of going shopping with his family but often sitting in the car,[3]

---

[3] Carroll explained that he is not "entirely housebound" in that he occasionally travels with his family when they go shopping to "sit in the car and wait for them to go in the store and come out." R. 123.

watching his children ride bicycles on the campus of Auburn University, and occasionally helping to care for small farm animals. R. 88. Next, the ALJ noted "relatively infrequent trips to the doctor," but only referenced the period of time from July to December of 2012, during which Carroll apparently did not seek medical care. R. 88. The ALJ then referenced Carroll's failure to abide by some of the directions made by his doctors and his ability to work prior to the alleged disability onset date despite "allegedly disabling impairments [that] were present at approximately the same level." R. 88. Finally, the ALJ considered Carroll's "generally unpersuasive appearance and demeanor" at the hearing, that he demonstrated "no evidence of pain or discomfort while testifying at the hearing," and treated the statements Carroll submitted from his father and two close friends "with caution" because of these individuals' personal relationship with Carroll and their lack of "expertise." R. 88–89. "In sum, the above residual functional capacity assessment is supported by the objective evidence, treatment records, the DDS medical consultant, and the record as a whole." R. 89.

Notably absent from the ALJ's opinion is any substantive application, or even meaningful discussion, of Ruling 03-2p. Though the ALJ references the "intensity, persistence, and limiting effects" of Carroll's symptoms, there is no evidence that, beyond this passing reference, he actually evaluated Carroll's CRPS in accordance with Ruling 03-2p's provisions. *See* R. 81–89. While there is a detailed recitation of the medical records and Carroll's symptoms, "'the mere mention of diagnosis and symptoms which may be associated with [CRPS] does not equate to an evaluation of the intensity, persistence, and

limiting effects of Plaintiff's [CRPS]' as required by SSR 03-2p." *Volk*, 2012 WL 4466480, at *4 (quoting *Bernstein v. Astrue*, 2010 WL 746491, at *5 n.9 (M.D. Fla. Mar. 3, 2010)).

As in *Hill v. Commissioner of Social Security*, the ALJ's determination here that Carroll's complaints are "not entirely credible" is undercut by his failure to evaluate Carroll's CRPS in accordance with SSR 03-2p specifically because of the fact that a CRPS patient's complaints of pain are often disproportionate to the severity of the injury and unsupported by objective medical evidence. *Hill*, 2011 WL 679940, at *11 (quoting SSR 03-2p). Indeed, Carroll's credibility was critical to the ALJ's decision to deny benefits, but "when additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain additional information that could shed light on the credibility of the individual's statements." SSR 03-2p. The ALJ has not done so here. Further, the ALJ noted what he perceived as relatively conservative treatment, *see* R. 88, but "a conservative degree of treatment does not warrant discrediting a plaintiff suffering from [CRPS]." *Bernstein*, 2010 WL 746491, at *8. Moreover, SSR 03-2p explains that third-party information is critical in deciding the claimant's credibility, but the ALJ gave short shrift to the third-party statements provided by Carroll. R. 89. He granted only "some weight" to Dr. Vester's opinion, and solely "to the extent that this assessment is consistent with the residual functional capacity above." R. 89; *see also* SSR 03-2p. It is therefore apparent that the ALJ did not conduct his analysis in accordance with Ruling 03-2p, and his decision to deny benefits is undermined as a result. Thus, the court cannot conclude that his opinion is based upon substantial evidence.

Because the ALJ here neither addressed Carroll's CRPS in a meaningful way, nor cited to Ruling 03-2p, "the Court is uncertain whether the ALJ was aware of the characteristics of this 'unique clinical syndrome' and the Administration's policy for evaluating claims based on [CRPS]." *Volk*, 2012 WL 4466480, at *5 (quoting SSR 03-2p). The ALJ's analysis and considerations, many of them contrary to the instructions found in Ruling 03-2p, reflect a need to consult the ruling and properly evaluate Carroll's CRPS in accordance with its directives. Accordingly, this case is due to be remanded to the administrative law judge for further proceedings.[4] Specifically, on remand, the ALJ is directed to: (1) evaluate Carroll's CRPS in accordance with the provisions of Ruling 03-2p, including by evaluating the intensity, persistence, and limiting effects of Carroll's symptoms in conjunction with the medical evidence of record; (2) reevaluate the credibility of Carroll's subjective complaints of pain; (3) reevaluate the credibility of the third-party statements Carroll has submitted; (4) reconsider Carroll's RFC; and (5) conduct any additionally proceedings as appropriate in light of Social Security Ruling 03-2p.

## V. CONCLUSION

Based on the foregoing, the court cannot conclude that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. It is therefore ORDERED that the decision of the Commissioner denying benefits is

---

[4] Carroll argues that this court should reverse the ALJ's denial of benefits and award benefits outright. Doc. 12 at 15. In the Eleventh Circuit, a district court may remand for entry of an order awarding benefits if "it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Here, without impermissibly stepping into the role of factfinder and reweighing the evidence itself, the court cannot conclude that it is clear that the evidence establishes Carroll's disability without a doubt. Thus, remand is the proper remedy.

REVERSED, and this matter is REMANDED to the Administrative Law Judge for further proceedings consistent with this opinion. A final judgment will be entered separately.

DONE this 10th day of February, 2017.

/s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE